## Kittaning Coal Company *v.* Moore et al., Appellants.

Argued April 13, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Carl A. Belin,* with him *Clarence R. Kramer,* for appellants.

*Harold J. Boulton,* with him *Boulton, Nevling & Davis,* for appellee.

OPINION BY MR. JUSTICE DREW, May 23, 1949:

In this action in ejectment to recover possession of certain coal lands, the learned court below entered judgment on the pleadings in favor of the lessor under a written lease, and lessees appealed.

On June 10, 1944, Kittaning Coal Company, plaintiff, executed a lease, granting to W. G. Moore and Herman Moore, individually and as partners trading as W. G. Moore & Son, defendants, the right to mine all coal contained under five tracts of lands in Clearfield County. This lease provided, inter alia, that plaintiff was to receive a royalty of fifteen cents for every ton of coal mined by defendants, but not less than $100 per month; that defendants would ". . . work the mine or mines diligently, according to the most approved method

of mining bituminous coal . . ."; and that the lease was to expire November 1, 1944, but that "If . . . [lessees] shall have complied with and performed all of the terms and conditions of this lease . . . [lessees] shall have the right to renew this lease *annually for further periods of one (1), two (2) or three (3) years from the date of expiration thereof, upon the same terms and conditions as are herein contained.*" (Italics added.) Defendants went into possession of the property under this lease and commenced mining operations.

Plaintiff filed this suit on December 10, 1947, alleging that defendants' occupancy of the property was unlawful in that their right to possession expired November 1, 1947—three years after the original expiration date. It was also averred that even if the lease permitted renewal after November 1, 1947, defendants had lost such right because of their failure to do any mining on the leased premises from April, 1945, to June, 1947, in violation of the provision requiring diligent mining. Defendants, in their answer, denied that the lease limited their renewal right to an aggregate of three years, and further averred that they had mined diligently according to approved methods. Their amended answer, under new matter, averred that the coal was unmarketable and that during the period from April, 1945, to June, 1947, they had procured a cleaning plant on an adjacent property and improved it at a cost of $22,000, in order to make the coal saleable; that plaintiff, through its agents, knew of those activities and approved them; that defendants have always paid the minimum royalties provided by the lease and that they have, in fact, paid to plaintiff royalties of $29,038.30 over the period of three and a half years they have been in possession of the property. Plaintiff's reply denied or treated as irrelevant all the averments set forth in the answer under new matter. Plaintiff then moved for judgment on

the pleadings, and the learned court below granted that motion and entered judgment in plaintiff's favor.

Defendants contend that inasmuch as the pleadings raise substantial questions of fact that the court below erred in entering judgment summarily. They argue that the provision of the lease that they shall ". . . have the right to renew this lease annually for further periods of one (1), two (2) or three (3) years from the date of expiration thereof" was intended to permit an unlimited number of such renewals, and not, as contended by plaintiff and found by the court below, that such provision was intended merely to give defendants the right to renew yearly for a total period of three years, to-wit, until November 1, 1947. Defendants further contend that the pleadings do not reveal an undisputed failure on their part to comply with the provision as to diligent mining.

A careful reading of the provision as to renewal shows that it is obviously ambiguous. If the language means that renewal was possible for an unlimited number of two or three year periods, it is difficult to understand why it would be necessary for defendants to renew *annually*. If, on the other hand, defendants were given the right to renew yearly for a total period of three years, then the use of the plural "periods" is improper. Plaintiff's position is further weakened by the rule that doubtful language in a lease must be construed against the lessor: *White v. Long*, 289 Pa. 525, 137 A. 673; *Kaufmann v. Liggett*, 209 Pa. 87, 58 A. 129. However, at this stage of the proceedings we are not compelled to resort to rules of construction. It is sufficient to say that the language of the lease is ambiguous and evidence of the surrounding circumstances must be produced to resolve that ambiguity: *Security Tr. Co. v. Stapp*, 332 Pa. 9, 1 A. 2d 236; *Schwartz v. Whelan*, 295 Pa. 425, 145 A. 525. The intent of the parties can only be determined by a full and complete hearing.

Nor do the pleadings show an undisputed failure to comply with the provision of the lease that defendants would ". . . work the mine or mines diligently, according to the most approved methods of mining bituminous coal." The sole breach alleged is the failure to mine diligently for a period of twenty-six months, and defendants respond that they did mine diligently and furthermore that the coal was unmarketable and that the time was spent acquiring and improving facilities to render it saleable. Diligent mining does not mean continuous mining. This Court said, in *Koch's and Balliet's Appeal,* 93 Pa. 434, 441-2: "It was evidently the intention of the parties that they [the mines] should be worked with reasonable diligence, and that would depend largely on the circumstances. The quantity and quality of the ore, and the demand that existed from time to time, would necessarily enter more or less into the question of due diligence." In the instant case, if the coal was of unmarketable quality and if defendants exercised due diligence in their efforts to make it marketable, they have not breached their covenant.

The pleadings do not present a case that is clear and free from doubts and in such circumstances a summary judgment is improper: *Peabody v. Carr,* 316 Pa. 413, 175 A. 378. "Doubtful cases should go to trial, especially those involving intricate relations demanding an inquiry into the facts of the controversy": *Helfenstein v. Line Mount. Coal Co.,* 284 Pa. 78, 81, 130 A. 301. Unquestionably a full inquiry into the facts of this case is essential to a proper determination of the issues involved.

Judgment reversed with a procedendo.