Waldman *v.* Shoemaker, Appellant.

588

Argued April 12, 1951. Before STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Walter L. Hill,* with him *Willard M. Henkelman,* and *O'Malley, Harris, Harris & Warren,* for appellants.

*Edward T. Jordan,* with him *Joseph V. Phillips* and *Joseph E. Gallagher,* for appellees.

OPINION BY MR. JUSTICE BELL, May 23, 1951:

Plaintiffs brought an action in assumpsit *upon a written contract* to recover $18,000. which they alleged defendants expressly and unequivocally contracted to pay them as soon as all the turkeys mentioned in the

agreement were sold. The defendants alleged that the parties entered into a *joint business venture;* that the plaintiffs were to be paid $18,000. if the venture was a financial success; that unfortunately the venture resulted in a loss, and therefore no money was due the plaintiffs. The Court entered judgment on the pleadings in favor of the plaintiffs, and from this judgment defendants took this appeal.

A summary judgment will be entered only in a case that is clear and free from doubt: *Kittaning Coal Co. v. Moore,* 362 Pa. 128, 132, 66 A. 2d 273; and the question therefore arises whether under the pleadings plaintiffs' right to recover the $18,000. is clear and free from doubt. In order to determine this we must examine the entire contract since it is well settled that in construing a contract the intention of the parties governs and that intention must be ascertained from the entire instrument: *Robinson v. Stover,* 320 Pa. 308, 314, 182 A. 145.

Plaintiffs are two individuals who operate food stores in New York City. Defendants are two individuals trading as Abington Hills Farm, who operate a turkey farm at Dalton, Pa. On April 4, 1945, plaintiffs and defendants entered into a written agreement. The agreement recites that the defendants intend shortly to purchase turkey eggs in order to hatch and market turkeys, and have requested plaintiffs to enter into a joint venture with respect to *a portion* of such turkeys. The agreement then states that the *defendants* intended to borrow $24,000. to be secured by a chattel mortgage on all of the turkeys to be *owned by the defendants;* that the *defendants would purchase and pay for* a minimum of 30,000 turkey eggs, *grow* the turkeys therefrom, *sell* the turkeys and for such purpose *furnish* their farm, buildings, equipment, supplies, labor, machinery, technical knowledge, and all the necessary feed and foodstuffs, *at their own expense;* and a similar provision with respect to an additional 30,000 turkey eggs if they were

able—as they were—so to do. Plaintiffs agreed to forth-with contribute and pay to defendants $18,000. Defend-ants agreed to sell all the *60,000 turkeys* and "within thirty days after such sale or sales shall pay [to plain-tiffs] a sum equivalent to one-half of the net profit or profits resulting from such sale or sales" of *6000* turkeys; and "Upon the sale of all of the turkeys. . . [*defendants*] *shall forthwith pay** [to. plaintiffs] *the aforesaid sum of Eighteen Thousand* ($18,000.00) *Dol-lars.*" There then followed a provision giving plaintiffs an option to purchase 6,000 of said turkeys at OPA or New York market prices; and a provision (a) that the defendants shall not incur any obligation whatso-ever to bind plaintiffs; and (b) that plaintiffs shall not be liable to pay any sum of money other than the said $18,000.

Defendants admitted the contract and admitted that plaintiffs had paid the $18,000. mentioned therein; but averred that the proceeds of sale of the turkeys were in-sufficient to pay the costs, and "that plaintiffs under-stood and agreed that this contract contemplated and provided for a joint venture with respect to the pur-chase of turkey eggs, the hatching and raising of tur-keys and the marketing thereof, . . .; that through no fault of defendants but solely by reason of the hazards of raising turkeys *losses were sustained* in the hatching and raising . . ."; and denied that they were indebted to plaintiffs.

Defendants do not aver that anything was omitted from the agreement by fraud, accident or mistake; their position seems to be that the agreement was ambiguous and parol evidence was therefore admissible to explain it. It is not clear from their contentions what the parol evidence would consist of and when, if ever, the parol agreement was made. If the parol agreement related to

---

* Italics throughout, ours.

prior or contemporaneous oral agreements the language of the Court in *Nick v. Craig,* 301 Pa. 50, 56, 151 A. 573, is particularly applicable: "There is neither averment nor proof that anything was omitted from or added to the agreement by fraud, accident or mistake; hence it must be construed exactly as it is written, and all prior negotiations as to its terms must be considered as merged in it." This is the modern Pennsylvania rule: *Grubb v. Rockey,* 366 Pa. 592, 79 A. 2d 255; *Walker. v. Saricks,* 360 Pa. 594, 598, 63 A. 2d 9.

If, however, a written contract is ambiguous, oral evidence is admissible to explain the contract and to resolve the ambiguity: *Security Trust Company v. Stapp,* 332 Pa. 9, 13, 1 A. 2d 236; *Kittaning Coal Co. v. Moore,* 362 Pa. 128, 66 A. 2d 273.

Was this contract ambiguous? The defendants promised to pay the plaintiffs $18,000. when all the turkeys mentioned in the agreement were sold. The turkeys were all sold. The promise to pay $18,000. was clear, absolute, unconditional and unambiguous. Did other parts of the agreement create, as defendants contend, an ambiguity; and particularly, did the contract create a joint venture under the terms of which plaintiffs would be entitled to the aforesaid $18,000. only if the joint venture was financially successful? It will be noted that under the agreement the defendants had and retained sole title to the turkey eggs and to the turkeys and to the proceeds of sale; and that the *plaintiffs had no control or voice or management or supervision* with respect to the purchasing, mortgaging, raising or selling of the turkeys; *nor was there any agreement, express or implied, to share the losses.*

While a joint venture is a legal relation of recent origin it has never yet been specifically or satisfactorily defined: Cf. 48 C.J.S. Joint Adventures §1a, p. 801. Nevertheless, it is evident that the essential requisites of a joint venture are not present in this agreement. As

this Court said in *Marcus v. Grant,* 289 Pa. 1, 4, 137 A. 120: " 'The fact that the contract provides for the sharing of the profits, while an important factor in determining the character of the contract, does not of itself make it one of joint adventure. There must be something more, some active participation in the enterprise; some control over the subject matter thereof or property engaged therein': 33 C.J. 847." Cf. *Davis v. Hillman,* 288 Pa. 16, 21, 135 A. 254; *Leisenring v. Harrison,* 104 Pa. Superior Ct. 379, 158 A. 631; *U.S. Fidelity & Guaranty Co. v. American Surety Co.,* 25 Fed. Supp. 280, 282; 48 C.J.S. Joint Adventures §2a, p. 809.

This agreement was not ambiguous and the court below correctly entered a summary judgment in favor of the plaintiffs.

Judgment affirmed.