Gaul *v.* Philadelphia, Appellant.
Jacobson *v.* Philadelphia, Appellant.
Jennings *v.* Philadelphia, Appellant.

Argued January 13, 1956. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*Abraham L. Freedman*, City Solicitor, with him *Murray L. Schwartz*, First Deputy City Solicitor, and *Abraham Wernick*, Deputy City Solicitor, for appellants.

*Marshall H. Morgan*, with him *Henry J. Morgan* and *Harry R. Kozart*, for appellees.

OPINION BY MR. JUSTICE CHIDSEY, March 13, 1956:

In these three actions of mandamus the City of Philadelphia and certain of its officers joined as defendants, appeal from the several judgments entered on the pleadings ordering reinstatement of the respective plaintiffs to positions in the City government from

which they had been dismissed. The cases were argued together in the court below which rendered an opinion in one case (the *Jennings* case) which was made applicable to the others. The cases were similarly argued together in this Court and all of them will be considered and determined in this opinion.

In Appeal No. 342 (the *Gaul* case) after preliminary objections to the answer filed by the defendants to the plaintiff's complaint were withdrawn, the plaintiff filed a motion for judgment on the pleadings. The case was, therefore, before the court on complaint and answer. After setting forth that plaintiff was a former county employe who had been retained in his employment after the adoption on November 6, 1951 of the City-County Consolidation Amendment, the complaint alleged: "On April 30, 1952, during the continuance of the said employment and before plaintiff had been afforded an opportunity to pass a qualifying test as provided by the Philadelphia Home Rule Charter,[1] the defendant, Joseph A. Scanlon, Clerk of Court of Quarter Sessions, as aforesaid, without just or proper cause and in violation of the provisions of the said Charter, unlawfully discharged plaintiff from his said employment and dismissed him from the service of the City of Philadelphia, thereby unlawfully depriving him of his right under the said Charter to be continued in the said employment and afforded the opportunity of passing the said qualifying test.". The defendants' answer averred: ". . . Plaintiff was discharged for just and proper cause, in that the position held by plaintiff was eliminated in the process of reorganizing the department for reasons of economy and efficiency; and for the further reason that plaintiff did not possess sufficient education, experience and qualifications to en-

---

[1] Adopted April 17, 1951, effective as of January 7, 1952.

able him to properly and efficiently perform the duties pertaining to his position.".

Where a plaintiff seeks summary judgment on the pleadings, the allegations of the answer must be accepted as true: *London v. Kingsley,* 368 Pa. 109, 81 A. 2d 870; *Waldman v. Shoemaker,* 367 Pa. 587, 80 A. 2d 776; *Kittaning Coal Company v. Moore et al.,* 362 Pa. 128, 66 A. 2d 273. Therefore, the allegation in the defendants' answer that ". . . Plaintiff was discharged for just and proper cause, in that the position held by plaintiff was eliminated in the process of reorganizing the department for reasons of economy and efficiency; . . ." must be taken as admitted. This being so, appellants contend that a sufficient defense was interposed to prevent the entry of judgment on the pleadings. On the other hand appellee, placing reliance upon our decision in *Cornman v. Philadelphia,* 380 Pa. 312, 111 A. 2d 121, contends that he was entitled to notice and opportunity to be heard before dismissal, and the mere allegation that he was dismissed because of the abolishment of his position without further averring that he was given such notice and opportunity to be heard, was insufficient to constitute a defense preventing summary judgment.

We held in *Carrow v. Philadelphia,* 371 Pa. 255, 89 A. 2d 496, that under §A-104 of the City Charter a county employe who became an employe of the City by virtue of the City-County Consolidation Amendment and who had never been under civil service regulations was entitled to be continued in her position until afforded the opportunity to pass a qualifying test and could not as theretofore be peremptorily discharged without cause. In the *Cornman* case which similarly involved a judgment entered on the pleadings, the sole allegation of the defendants in their answer as the reason for the plaintiff's discharge was that he was "in-

subordinate", "untidy" and "failed to cooperate" in the performance of his duties. Thus he was discharged for delinquencies in his work, a cause personal to him as an employe. Under these circumstances we held that he was entitled to notice of the charges against him and a hearing before dismissal. Here under the pleadings the dismissal occurred for the impersonal reason that the position was abolished for reasons of economy and efficiency. Neither in *Carrow* nor *Cornman* was the employe's position allegedly abolished and consequently the question now arising out of a dismissal because of abolishment of the position was not before us. There is a basic difference between a dismissal for causes personal to the employe and dismissal as a result of the abolition of a position. Where the employe is dismissed because of failure to properly perform the duties of his employment, his position continues for performance of its duties by a successor. Where the position is abolished, it no longer exists and there is no position to which the dismissed employe can be reinstated. Moreover, where the position is abolished for reasons of economy and efficiency, there is nothing for the dismissed employe to explain or justify as there might be where the dismissal is for insubordination, untidiness, lack of cooperation or other matters personal to the employe. The employe has no voice in the elimination of a position for reasons of economy or efficiency. This is a matter solely for the judgment of the governmental authority in whom the power to eliminate the office is vested.

At the time of his dismissal plaintiff was a *non-civil service* employe whose status as to tenure was only that afforded him by §A-104 of the Charter, namely, the right to continue in his employment until given the opportunity to become a *civil service* employe by passing a qualifying test. His status as to tenure was

patently inferior to that of civil service employes who enjoyed, inter alia, the protection of civil service provisions as to notice and hearing before dismissal. Certainly the right of employes in plaintiff's category can rise no higher than the rights of employes who have attained civil service status, and we have repeatedly held that where an office held by a civil service employe is abolished, no notice or hearing need be given to the incumbent: *Essinger v. New Castle*, 275 Pa. 408, 119 A. 479; *Leary v. Philadelphia et al.*, 314 Pa. 458, 172 A. 459; *Boyle et al. v. Philadelphia et al.*, 338 Pa. 129, 12 A. 2d 43. In the *Essinger* case a fireman who was dismissed for reasons of economy brought mandamus proceedings to compel reinstatement on the ground that under the applicable Civil Service Act he could be removed only after trial for causes specified. This Court rejected the plaintiff's contention. Mr. Justice SADLER, speaking for the Court, stated: "Civil service acts are designed to secure the appointment of competent public servants, and protect them in their employment from attacks on personal grounds, so long as they are well behaved. They are not intended to retain in office at public expense those whose services may be dispensed with for economy. 'The purpose of the civil service statute, and of other laws prohibiting the discharge of employees without cause assigned, notice, and a hearing, is to insure the continuance in public employment of those officers who prove faithful and competent, regardless of their political affiliations. These statutes are not intended to affect or control the power of the city council, or the executive officers of the city, to abolish offices when they are no longer necessary, or for reasons of economy. They are not intended to furnish an assurance to the officer or employee that he will be retained in the service of the city after the time when his services are required. They do

not prevent his discharge in good faith without a trial, and without notice, when the office or body is abolished as unnecessary, or for reasons of economy': 2 Dillon Municipal Corp. (5th ed.) 805. In the absence of some constitutional provision or legislative enactment, notwithstanding the Civil Service Act, the municipality may do away with an office created by it, though the effect is the removal of an employee from his situation: 5 R. C. L. 614. Though not the subject of previous discussion in Pennsylvania, this has been the uniform ruling in many states where consideration has been given to the question: Harker v. City of Bayonne, 85 N. J. L. 176; Washington v. Seattle, 74 Wash. 199, 133 Pac. 11; Shawanee v. Hewett, 37 Okla. 125, 130 Pac. 546; People v. Lindenthal, 173 N. Y. 525, 66 N.E. 407; Gardner v. Lowell, 221 Mass. 150, 108 N.E. 937; note, 4 A.L.R. 205.".

Counsel for appellee contends that the principal declared in the *Essinger* case is applicable only in the absence of some legislative requirement and that here the civil service provisions of the Charter prescribe notice and hearing before dismissal. This is a misinterpretation of the *Essinger* case and is contrary to the whole tenor of the opinion. It would appear that counsel misconstrues the sentence in the above quoted excerpt therefrom that ". . . In the absence of some constitutional provision or legislative enactment, *notwithstanding the Civil Service Act,* the municipality may do away with an office created by it, though the effect is the removal of an employee from his situation: . . .". (Emphasis supplied). It is clear that this limitation upon the application of the rule refers to some inhibition other than that contained in the civil service enactment relied on. Counsel points to no such constitutional provision or enactment.

Furthermore appellee did not enjoy civil service status and was not within the benefit and protection of the civil service provisions of the Charter. All of our opinions dealing with former county employes make it clear that the civil service provisions of the Charter and regulations promulgated thereunder are not applicable to them prior to the time they pass their qualifying tests and enter the civil service. See the *Carrow* and *Cornman* cases and *Butcher v. Philadelphia*, 380 Pa. 290, 110 A. 2d 349. And this is also sufficient answer to appellee's contention, not considered by the court below but stressed at the oral argument before us, that appellee should not have been discharged but laid off under the civil service regulation providing for "Lay-Offs".[2] An additional answer to this contention is that the complaint in mandamus did not seek to have plaintiff placed upon a "re-employment list" as provided in the case of an employe laid off, but sought immediate full reinstatement and back pay as damages.

The court below seemed to be of the opinion that the rule established in the *Essinger* case was not applicable unless the abolishment of plaintiff's position was accomplished by an ordinance of city council.

---

[2] Regulation XXI, §3: "Lay-Offs. The appointing authority *may lay off* an *employe in the civil service* because of a material change in duties or departmental organization or because of a lack of either work or funds. The appointing authority shall notify the Personnel Director of the action with reasons therefor and shall send a copy of such notice to the employee affected. If certified as having given satisfactory service, the name of the employee laid off shall be placed on the appropriate re-employment list. If not certified as having given satisfactory service, the employee laid off may consider the action as a discharge and may request a hearing as provided by these regulations. The order of lay-offs shall be governed by a consideration of efficiency ratings when available.". (Emphasis supplied).

There is no such limitation in *Essinger* and no such narrow application of the rule is warranted. It is of no significance whether the office is abolished by the legislative or by the executive branch of government. As stated in the *Essinger* case: ". . . 'These [civil service] statutes are not intended to affect or control the power of the city council, *or the executive officers of the city,* to abolish offices when they are no longer necessary, or for reasons of economy . . .' ". (Emphasis supplied). Public policy requires the elimination of needless positions and it is of no importance in whom the power to abolish is vested. The Philadelphia City Charter effected a complete change in the handling of personnel matters and gave to the executive branch complete freedom within the framework of the overall budget to establish positions to the number required and the compensation pertaining to them, and, at least by necessary implication, the power to reduce the number of positions.[3]

---

[3] In Section 3-702 of the Charter it is specifically provided: ". . . the *heads of the several departments* and the several boards and commissions *shall appoint and fix the compensation of such* secretaries, consultants, experts, bureau or division chiefs, superintendents, assistant superintendents, assistant chiefs, and other assistants and *employees as may be required* for the proper conduct of the work of their respective offices, departments, boards or commissions.". (Emphasis supplied). The meaning and intention of this provision is reflected in the annotation to the section which reads: "The number of employees to be appointed and their compensation are made a matter of decision for the administrative and executive branch, rather than the legislative branch, of the government. Appropriations will be made in lump sums to the various departments, boards and commissions for personnel services. Each agency will decide how many employees are to be appointed and what their salaries shall be within the lump sum appropriation to it. The Council retains legislative control to the extent of its power to appropriate the lump sums requested. . .".

Counsel for appellee argues that the abolishment of a position is a permanent measure and should be accomplished only through councilmanic action which would be binding not only on the then department head but upon his successors in office, whereas where the head of a department abolishes a position, his successor in office could restore it. But so could council. Under the Charter the power to eliminate a position is given to the executive officer. While the exercise of the power is open to attack as not made in good faith, the power exists. To buttress this argument counsel again refers to the "Lay-Off" regulation (Footnote 2, supra) promulgated by the Civil Service Commission pursuant to Section 7-401(o). But as before stated, appellee as a former county employe was not covered by the civil service provisions of the Charter.

There remains for consideration the appellee's contention that in addition to the abolition of plaintiff's position assigned by the City as the cause of his dismissal, the City also alleged as a cause that plaintiff ". . . did not possess sufficient education, experience and qualifications to enable him to properly and efficiently perform the duties pertaining to his position.". Much of appellee's argument proceeds upon the assumption that this was the only reason for his dismissal. Based on this premise there is much to be said in favor of appellee's contention that it was not for his immediate superior to pass upon his qualifications, that he was entitled under §A-104 to pass a qualifying test prescribed by the Personnel Director and approved by the Civil Service Commission. However, lack of qualifications was not the only cause alleged for plaintiff's dismissal. It was averred that he was discharged because of the abolishment of his position, and this averment must be taken as admitted under plaintiff's motion for judgment on the pleadings. That the answer

set up another cause or reason for his dismissal insufficient in law to constitute a defense does not destroy the efficacy of the cause alleged for the dismissal that plaintiff's position was eliminated; this raised an issue of fact requiring hearing on the merits, namely, was there a bona fide abolishment of plaintiff's position?

In Appeal No. 343 (the *Jacobson* case) the plaintiff filed a complaint alleging that he was employed as a children's agent in the office of the county commissioners prior to the City-County Consolidation Amendment adopted on November 6, 1951 and was continuously employed in this position; that "On April 7, 1952, during the continuance of the said employment and before plaintiff had been afforded an opportunity to pass a qualifying test as provided by the Philadelphia Home Rule Charter [Section A-104], the defendants, Thomas P. McHenry, Maurice S. Osser and Walter I. Davidson, City Commissioners, as aforesaid, without just or proper cause and in violation of the provisions of the said Charter, unlawfully discharged plaintiff from his said employment and dismissed him from the service of the City of Philadelphia, thereby unlawfully depriving him of his right under the said Charter to be continued in the said employment and afforded the opportunity of passing the said qualifying test.". As in the *Gaul* case, the plaintiff prayed that he be restored to his position and be paid his damages. The defendants' answer averred that plaintiff was dismissed ". . . for just and proper cause in that his employers were compelled to reduce the number of employees in the office of the County Commissioners for the purpose of economy and efficiency; and plaintiff was duly notified in writing of the said reasons for his discharge.". Plaintiff filed an amended complaint which reiterated the allegations of the original complaint but also averred ". . . that

he was entitled to the benefits of Sections 1 and 2 of Regulation XXII of the Civil Service Commission of the City of Philadelphia, which provides that any dismissal after completion of the required probationary period of service shall be for just cause only and that the employee must be notified of the reason for the dismissal and may, within ten days, reply thereto in writing.". Plaintiff attached to the amended complaint a copy of the notice of dismissal which he had received, reading as follows: "This is to notify you that your services as an employee of the County Commissioners Office will no longer be required, for cause, as of April 7, 1952.". The defendants filed an answer to the amended complaint again averring that plaintiff was discharged because his employers were ". . . compelled to reduce the number of employees . . . for the purpose of economy and efficiency", and further averring that plaintiff made no effort to reply to the notice of dismissal duly given him, nor did he seek an opportunity to do so. In answer to the allegation with regard to the civil service regulations, the defendants alleged that Section 7-201 of the Home Rule Charter provides a right of appeal to the Civil Service Commission for review of any dismissal or demotion, and that plaintiff had failed to avail himself of that remedy. Plaintiff filed a motion for judgment on the pleadings. The case was argued before the court below which filed a memorandum opinion and order holding the defendants' answer to the amended complaint insufficient in law but allowing them to file an amended answer. The defendants filed a supplemental and more detailed answer. It averred that plaintiff's employers reduced the number of their employes for reasons of economy in that the Children's Bureau had undergone a reorganization and that the personnel of the city commissioners' office had been reduced and the number of inves-

tigators in the Children's Bureau had been reduced from 21 to 16 between January 7, 1952 and the end of April, 1952; and that plaintiff's position was one of those eliminated and his work in District 1 was consolidated with that of another district. The defendants also alleged that he had failed to investigate as required, had filed incomplete, false and inadequate reports, and had been insubordinate. Under New Matter the defendants further averred that the Children's Bureau had been abolished under an order of the Municipal Court dated April 17, 1953 and that this order was being carried out at the time the City filed its supplemental answer.

Despite the many averments in the extended pleadings in this case, on plaintiff's motion for judgment on the pleadings the averments in the defendants' answers that plaintiff was discharged because the city commissioners reduced the number of their employes for reasons of economy and that plaintiff's position was eliminated by consolidation of work, must be taken as true. The abolishment of the position thus alleged without more prevented summary judgment for the plaintiff not being entitled to notice and hearing before dismissal under the *Essinger* rule, no additional averments with respect thereto were required in order to set forth a defense. It is unnecessary to again discuss contentions made by appellee in this regard which were considered and rejected in the *Gaul* case, supra. However, appellee's counsel makes the additional argument that, unlike the *Gaul* case where plaintiff did not plead whether or not notice was given to the employe, the plaintiff here having set forth that notice was given, and such notice stating that plaintiff's services would "no longer be required, for cause", it must be assumed that the cause of the dismissal was for reasons personal to the employe, that is; some delinquency in the per-

formance of his duties. Certainly the elimination of an employe's position is as much a cause for his dismissal as the unsatisfactory performance of his duties. In *Crede v. Pittsburgh et al.,* 355 Pa. 369, 49 A. 2d 700, this Court, speaking through Mr. Justice DREW, said: ". . . In the instant case, the *elimination of two of the positions* of Assistant Engineer by City Council *for economy reasons was 'just cause'* for the discharge of two employees: . . . There was, therefore, nothing more for the Director to establish. . .". (Emphasis supplied). However, assuming that the words "for cause" in the notice sent appellee have the restricted meaning ascribed to them by counsel, a sufficient answer to the contention based thereon is that appellee's dismissal having occurred because of the abolishment of his position, no notice of any kind was required. That appellee's employer did more than he was required to do is of no avail. Such volunteered action did not derogate from the propriety of the dismissal without notice under the *Essinger* rule. It is true that the notice given to the dismissed employe in the *Cornman* case was emphasized in the Opinion of the Court, but this must be taken in connection with and related to the admitted fact that the discharge there occurred because of delinquency in the performance of the employe's duties. The underlying and basic reason for the decision in the *Cornman* case, as appears from a careful analysis of the Opinion of the Court and the Concurring Opinion was that as a matter of fundamental justice a municipal employe who enjoyed tenure of office was entitled to know and meet before dismissal the charges of delinquency made against him. Obviously this reason for notice and opportunity to be heard is not aplicable where the position in question is lawfully abolished. There can be no reinstatement to an office which no longer exists, and the manner in which the dismissed

incumbent performed the duties of his employment is of no consequence.

In Appeal No. 344 (the *Jennings* case) plaintiff alleged that she was employed as chief clerk in the office of the sheriff prior to the City-County Consolidation Amendment and that during the continuance of such employment and before she had been afforded an opportunity to pass a qualifying test as provided by the Charter (Section A-104) on January 2, 1953 she was "peremptorily and unlawfully discharged" without prior written notice to her by the Personnel Director of any reasons therefor constituting just or proper cause and without having been afforded an opportunity to reply in writing within ten days as provided by the Civil Service Regulations. She further averred that the first and only notice of dismissal she had received was a letter from the sheriff which read: "For just cause, your employment in the Sheriff's Office has been terminated, effective January 2, 1953. Any unfinished business, your Sheriff's badge and identification card must be turned in to your immediate supervisor at once.". As in the *Gaul* and *Jacobson* cases, the plaintiff prayed that she be restored to her position and be paid her damages. Defendants filed an answer denying that the plaintiff was employed as a chief clerk but that she had only performed clerical duties consisting of taking care of the purchasing items required by the sheriff's office and seeing that the vouchers were properly forwarded, and also assisted in writing up summonses for prospective jurors and that the plaintiff was dismissed for ". . . just and proper cause, in the further reorganization of the Sheriff's Department in order to effect efficiency and economy", and that "plaintiff's position was abolished and no other person was appointed to perform the functions and duties formerly performed by her". Under New Matter it was

averred that on January 12, 1953 plaintiff had filed an appeal with the Civil Service Commission, which appeal was still pending and undetermined, averring that plaintiff had been earning compensation since her dismissal for which she had failed to give credit in her complaint and that "Defendants are further advised that to reinstate the plaintiff would impose an undue burden upon the City, would unjustly affect the public interest, and would tend to disorder and confusion.". Following a motion by plaintiff for judgment on the pleadings the City was granted leave to file an amended answer which was filed and in which the averments of the original answer were repeated as to the abolishing of the plaintiff's position. It was further averred that in addition to the written notice of January 2, 1953, plaintiff received oral notice shortly before that date from the deputy sheriff to the effect that in the process of reorganization of the sheriff's office the duties which she performed were being consolidated and taken over by other employes of the office, naming them; and that although plaintiff had the opportunity to do so, she did not answer or attempt to answer these reasons. The averments under New Matter in the original answer were repeated.

The foregoing summarizes the allegations contained in the pleadings. As in the *Jacobson* case, on plaintiff's motion for summary judgment the averments contained in the defendants' answer, repeated in the amended answer, that plaintiff's position was abolished upon a reorganization of the sheriff's department to effect efficiency and economy must be taken as true, and this constituted a defense requiring disposition on the merits. All of appellee's contentions to the contrary have been covered by the rulings made in our consideration of the *Gaul* and *Jacobson* cases.

In *Kittaning Coal Company v. Moore et al.*, 362 Pa. 128, 66 A. 2d 273, this Court stated at p. 132: "The pleadings do not present a case that is clear and free from doubts and in such circumstances a summary judgment is improper: . . . 'Doubtful cases should go to trial, especially those involving intricate relations demanding an inquiry into the facts of the controversy': Helfenstein v. Line Mount. Coal Co., 284 Pa. 78, 81, . . .". What was there said is especially true when resort is had to the extraordinary remedy of mandamus where the right to the issuance of a peremptory writ must clearly appear. See: *Travis v. Teter*, 370 Pa. 326, 330, 87 A. 2d 177; *Waters v. Samuel*, 367 Pa. 618, 622, 80 A. 2d 848; *Tanenbaum v. D'Ascenzo et al.*, 356 Pa. 260, 51 A. 2d 757.

We are of the opinion that the court erred in entering summary judgments in these cases. An issue of fact, determinable by trial on the merits was sufficiently raised in each case, namely, was there a bona fide abolishment of the plaintiff's position. There is a presumption that the position was eliminated in good faith, but this may be overcome by evidence that the abolishment was a mere pretense or subterfuge to cover up the discharge of an employe for political reasons, and consequently not made in good faith in the interest of economy and efficiency.

After the appeal taken in this case, the City filed a petition in this Court requesting that the record be considered as though certain facts had been averred in the defendants' answer. These facts, not contained therein, were that after the plaintiff Jennings was discharged from the sheriff's office she was employed in the office of the city treasurer from which office she later voluntarily resigned and applied for and received pension payments from the City. The petition prayed in the alternative that we remand the record to the

court below to afford the City an opportunity to file a supplemental answer containing these facts. Being of the opinion that we should hear the case on the record as it existed when the appeal was taken, we so determined it. Since the record must be remanded for further proceedings, the petition shall be considered denied without prejudice to the right of the City to amend its answer in the court below.

The judgment in each of the cases is reversed and the record remanded with a procedendo.

---

DISSENTING OPINION BY MR. JUSTICE BELL (IN JACOBSON V. PHILADELPHIA):

Plaintiff filed a complaint in mandamus alleging that he was employed as a children's agent in the office of the County Commissioners prior to the City-County Consolidation Amendment adopted on November 6, 1951; and that on April 7, 1952 the defendants, the City Commissioners, unlawfully discharged him from his employment and dismissed him from the service of the City of Philadelphia; and prayed that he be restored to his position and be paid his damages. His notice of dismissal read: "This is to notify you that your service as an employe of the County Commissioners office will no longer be required, for cause, as of April 7, 1952." Defendants subsequently filed an answer which averred that they had reorganized the Children's Bureau and had reduced the number of employes for reasons of economy, and that plaintiff's position was one of those eliminated and his work was consolidated with that of another district. The defendants also alleged that he had failed to investigate as required, had filed incomplete, false and inadequate reports and had been insubordinate. The question arises

whether the answer came too late to validate an invalid discharge.

The majority's decision, without expressly so stating, overrules or makes meaningless the decision in *Cornman v. Philadelphia*, 380 Pa. 312, 111 A. 2d 121. What that decision held is well and accurately stated in the syllabus as follows:

"2. Where such an [County] employe is dismissed and the dismissal notice states that it is 'for just cause' but the cause is not specified and he is given no opportunity to answer any charge against him and have a hearing thereon, the dismissal is invalid.

3. Where such an employe has been invalidly dismissed and seeks to be reinstated in an action of mandamus, the setting forth in the answer, *for the first time, the reasons for the employe's dismissal which constituted the 'just cause', does not** give validity to the unlawful dismissal and constitute any defense to the action of mandamus."

Plaintiff's motion for judgment admits facts in the answer which are well and clearly pleaded, but not the pleader's conclusions viz. just cause, or conclusions of law: *Gardner v. Allegheny County*, 382 Pa. 88, 114 A. 2d 491; *Narehood v. Pearson*, 374 Pa. 299, 96 A. 2d 895.

I would affirm the lower Court which held that this case is directly ruled by *Cornman v. Philadelphia*, 380 Pa., supra. In that case Justice ALLEN M. STEARNE, writing the opinion of the Court, said (pages 323, 325):

"Despite the Herculean effort of defendants to dispossess all County employes contrary to the plain provisions of the Charter and this Court's decisions, the single controlling question is the legality of their dismissal and particularly the sufficiency of the method employed for the removal of such employes 'for cause'.

---

* Italics, ours.

In Carrow v. Philadelphia [371 Pa., supra], we decided a former County employe could not be discharged for political reasons but only for 'just cause'. As above stated, the plaintiff received a written notice which read, '[f]or just cause' the employment was terminated. *No facts or reasons constituting 'just cause' were given,*\* however, nor were the discharged employes given any hearing or indeed any opportunity to learn the derelictions with which they were charged, and to present a defense thereto. This was a violation of fundamental justice and of the rights given them by the Charter.

"When plaintiff filed his complaint in mandamus he alleged such assigned reason was insufficient at law. Defendants answered that the plaintiff was insubordinate, inefficient, untidy and did not cooperate. It is contended by defendants that this is a sufficient statement of 'just cause' which raises a question of fact to be determined either by a jury or the Civil Service Commission. *The discharge was invalid and the answer setting up new facts comes too late to validate it.*\*

. . .

"In the present facts it is obvious that the dismissals constitute an attempt to make possible the retention of the spoils system—such dismissals being for purely political reasons. The device employed is transparently apparent."

I agree with the majority that plaintiff cannot recover if there was a bona fide abolition of his position. As stated by Chief Justice STERN in *Carrow v. Philadelphia,* 371 Pa. 255, 89 A. 2d 496—where this Court held that a County employe could not be discharged for political reasons or without cause—"It remains only to add that nothing herein contained must be un-

---

\* Italics, ours.

derstood as preventing the dismissal of employes if the positions they occupy are no longer required,—in other words, if by reason of lack of funds or work the force should be reduced. In that event, however, as stated in the annotation of the Drafting Committee to subsection (o) of section 7-401 of the Charter, lay-offs for any such reason should be determined on the basis of service efficiency and seniority considerations."

While this was dictum, it was sound law; and it was quickly availed of by city departments. However, that dictum did not mean, as the City contends, that a[n alleged] reorganization or a[n alleged] spreading or division of an employe's work among other employes constitutes an abolition of the position. This case is, like *Cornman*, another transparent subterfuge, a palpable political evasion and an indefensible violation of the Charter; and if *Cornman v. Philadelphia* is still the law, the answer alleging (a) reorganization for economic reasons and (b) inefficiency, comes too late to validate the invalid discharge.

---

DISSENTING OPINION BY MR. JUSTICE BELL (IN JENNINGS V. PHILADELPHIA):

Plaintiff, employed as Chief Clerk in the office of the Sheriff prior to the City-County Consolidation Amendment, was dismissed in a letter from the Sheriff which read: "For just cause, your employment in the Sheriff's office has been terminated, effective January 2, 1953." The Sheriff filed an answer in the mandamus proceeding brought by plaintiff stating, inter alia, that in the process of reorganization of the Sheriff's office the duties which she performed were being consolidated and taken over by other employes of the office, naming them.

Under *Cornman v. Philadelphia,* 380 Pa. 312, 111 A. 2d 121, this answer came too late. I would affirm the lower Court which held that this case is directly ruled by *Cornman v. Philadelphia.*