## Owens, Appellant, *v.* Thompson.

Argued May 23, 1956.  Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Harold J. Boulton,* with him *John B. Gates* and *Boulton & Boulton,* for appellants.

*Frank G. Smith,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, June 25, 1956:
Ray W. Owens and Barbara E. Owens, the plain-

tiffs in this case, own the coal rights under four tracts of land, totaling approximately 274 acres in Pike Township, Clearfield County. As to surface ownership Ray Owens held title to an undivided one-fifth of the land. The other four-fifths were owned by one Ray Walker. On May 5, 1949, Clyde G. Thompson, the defendant in this case, entered into a lease agreement with Ray and Barbara Owens, the plaintiffs, for the right to mine and remove the coal in the D and E seams lying in, upon or under the 274 acres, plus surface rights in the one-fifth interest heretofore mentioned.

The lease provided that the lessee was to "proceed at once to develop the mining operation in the 'D' or Moshannon vein of coal upon the leased premises now opened, and diligently mine and remove said coal according to the laws of Pennsylvania in a good and workmanlike manner, for the purpose of recovering all the coal . . . remaining in the leased premises."

The lessee agreed to make minimum royalty payments in the sum of $250 per month, all royalties paid on coal actually mined to be credited on minimum royalties due in any succeeding month of the leased term, the lessee retaining the right to mine sufficient coal to reimburse himself for any overpayment of minimum royalty. The lease was to go into effect on May 16, 1949 and continue in full force and effect for a period of five years with the right of renewal on the part of the lessee for "periods of one year each, on the expiration of the original five year term, providing he shall not be in default in any of the covenants, terms and conditions of the said lease prior to this election of renewal thereof." The lease contained no provision requiring the lessee to give written or other notice of his intention to continue with the lease.

The defendant Thompson was authorized, under the terms of the agreement, to employ both deep mining

and open pit methods in extracting the coal. The latter technique requires possession of the upper crust of the earth since it entails the actual stripping away of the outer covering of the terrain. In order to make full use of the strip mining procedure, the defendant set out to obtain surface rights in the remaining four-fifths of the surface. This he was unable to accomplish until July, 1954. In the meantime he purchased the deep mining equipment at the mine and proceeded to use it. Because of conditions over which he had no control he encountered difficulties and misfortune. Driving a heading which took him into the old workings of an adjacent mine, water poured into his holdings, necessitating the use of pumps to keep the mine working. However, by February, 1953, because of the excess water which had pervaded the workings and because also of rock faults in the D vein to the right and head of the main heading, continued room-and-pillar mining became impracticable, and the defendant ceased operations. In all this time the defendant had produced only 10,872.75 tons of coal.

On April 24, 1954, the plaintiffs charged the defendant with having defaulted in the covenants, terms and conditions of the lease and that, therefore, all rights thereunder would terminate as of May 16, 1954. All royalties tendered by the defendant after this date were refused. Specifically the plaintiffs complained that the defendant had not mined enough coal, that he had allowed the mining equipment to deteriorate, that he was responsible for the flooded condition of the main heading, the collapsing of timbers, and the general disrepair of the tipple, the air course, and other parts of the mine.

The defendant refused to yield up the lease, and, in July, 1954, having obtained the surface rights to the remaining four-fifths of coal lands, proceeded to strip

mine coal, producing up to and including June, 1955, 19,911.30 tons.

On December 2, 1954, the plaintiffs brought an action in equity to enjoin the defendant from conducting any mining operation upon the property of the plaintiffs, asserting that the lease, for reasons already mentioned, had terminated on May 15, 1954. A rule to show cause why the injunction should not issue was allowed and, with answer filed, the matter came on for a hearing before the Court of Common Pleas of Clearfield County which dismissed the complaint. The plaintiffs appealed.

We believe that the record in the case supports the decision of the Court below. The learned Chancellor, who heard the case, properly held that the plaintiffs could not predicate a dissolution of the agreement on the fact of a low tonnage production since the flooding and other damage done to the mine was not the result of any demonstrated fault on the part of the defendant. Certainly it was to the defendant's advantage, as much as to the plaintiff's, to mine as much coal as possible. That the defendant was not indifferent to his obligations under the lease and that he was resolved to make the enterprise a successful one for both parties is evidenced by the fact that he paid the plaintiffs $14,875 in minimum royalties when the royalties for the coal actually removed amounted to only $2,174.55.

The plaintiffs could not predicate termination of the lease on the fact that the mining equipment had deteriorated since the defendant, and not the plaintiffs, owned the equipment. Nor could they maintain that the defendant had rendered the mine unfit for further profitable use. The Chancellor found that the headings of the mine were not in such condition that they could not readily be gotten into shape for operation. And it is to be observed also in connection with the plaintiffs'

protestations, that since they conceded to the lessee the right to use the open pit procedure in quarrying the coal, they could not complain because, confronted as the defendant was, with the prospect of heavy losses through the deep mining method, he decided to wait until he was able to acquire the surface rights of the land and then obtain the fruits of his venture through strip mining.

We are satisfied from a study of the record that the evidence in the case sustains the Chancellor's findings and conclusions and will therefore affirm them. (*Roth v. Hartl*, 365 Pa. 428.) We believe further that it would be inequitable to permit the plaintiffs to terminate the lease after having received $14,875 for only 10,872.75 tons of coal and thus deprive the defendant of the opportunity to recoup his losses through the more profitable system of strip mining.

The plaintiffs failed to prove any substantial non-compliance with the terms of the lease agreement or any wilful and intentional violation of its terms. The lease agreement did not stipulate that the defendant was to mine and remove any particular number of tons of coal per month or year, it did not lay down any particular type of operation for obtaining the coal, it did not enumerate specifications as to the kind or quality of equipment to be used, it imposed no other requirement except that the defendant was to operate "diligently" in mining and removing coal in accordance with the laws of the Commonwealth. Diligent mining does not mean continuous mining. In the case of *Kittaning Coal Company v. Moore*, 362 Pa. 128, 132, this Court said: "Nor do the pleadings show an undisputed failure to comply with the provision of the lease that defendants would '. . . work the mine or mines diligently, according to the most approved methods of mining bituminous coal.' The sole breach alleged is the failure to

512

mine diligently for a period of twenty-six months, and defendants respond that they did mine diligently and furthermore that the coal was unmarketable and that the time was spent acquiring and improving facilities to render it saleable. Diligent mining does not mean continuous mining. This court said, in Koch's and Balliet's Appeal, 93 Pa. 434, 441-2: 'It was evidently the intention of the parties that they (the mines) should be worked with reasonable diligence, and that would depend largely on the circumstances. The quantity and quality of the ore, and the demand that existed from time to time, would necessarily enter more or less into the question of due diligence.' "

Since the defendant was not in default at the end of the five year term and since he chose to renew the lease, continuing to tender royalties as specified in the lease, the Chancellor properly held the lease to be in full force and effect, and properly dismissed the complaint.

Decree affirmed; costs to be borne equally between the parties.