Frank Fusaro, Appellant, *v.* Civil Service Commission of the City of Pittsburgh and The City of Pittsburgh, Appellees.

Argued November 8, 1974, before Judges WILKINSON, JR., ROGERS and BLATT, sitting as a panel of three.

*Larry P. Gaitens,* with him *Lucchino, Gaitens & Hough,* for appellant.

*Eugene B. Strassburger, III,* Executive Assistant City Solicitor, with him *Mead J. Mulvihill, Jr.,* Deputy City Solicitor, for appellees.

OPINION BY JUDGE WILKINSON, December 2, 1974:

This appeal by Pittsburgh's former Street Lighting Division Engineer from an economic dismissal involves the proper application of Section 20.1 of the General Civil Service portion of the Second Class City Code, Act of June 20, 1947, P. L. 663, *amending* the Act of May 23, 1907, P. L. 206, 53 P.S. §23454 (Act). The pertinent facts are that appellant, Frank Fusaro, an electrical engineer, had been employed by the City of Pittsburgh since April of 1968 as a "streetlighting engineer." His job consisted mainly of supervising the design, installation and operation of the City's street lighting facilities (made up of approximately 35,000 street lights) and administering various street lighting contracts.

Early in November of 1970, appellant received a letter from the Director of the Department of Public Works stating, *inter alia*: "For reasons of economy it has been determined that it is necessary to terminate your employment with the City of Pittsburgh. Accordingly, I regret to inform you that your last working day will be November 20, 1970. . . ."

In due course, appellant filed a proper appeal with the Civil Service Commission of the City of Pittsburgh. After extensive hearings, the Commission, on May 26, 1971, found in favor of the City on the question of the validity of the economic basis of appellant's dismissal, and ordered that the "appeal of Frank Fusaro from his termination for economic reasons is denied." Appellant then took an appeal to the Allegheny County Court of Common Pleas. There, based on the record below, Judge Ross affirmed the decision of the Commission. The instant appeal to this Court followed.

Where the court below takes no additional evidence in its determination of an appeal from a Civil Service Commission, the scope of review of the Commonwealth Court is limited to evaluation of the record to determine whether the Commission abused its discretion or committed an error of law. *Shannon v. Civil Service Commission,* 4 Pa. Commonwealth Ct. 492, 287 A. 2d 858 (1972). We are bound by the findings of fact of a Civil Service Commission where such findings are based on substantial evidence; we cannot and will not weigh the testimony and substitute our discretion for that of the Commission, insofar as they do not abuse their discretion. *Gretton v. Pittsburgh,* 344 Pa. 219, 25 A. 2d 351 (1952); *Williams v. Civil Service Commission,* 9 Pa. Commonwealth Ct. 437, 306 A. 2d 419 (1973), *aff'd* 457 Pa. 470, 327 A. 2d 70 (1974).

There is clear and substantial evidence on the record to support the finding of the Commission that appellant's position was terminated for reasons of economy.

We completely agree with the Commission and the court below that appellant did not sustain his burden of proof to show to the contrary. We hold that the Commission has committed no abuse of discretion in its findings.

Appellant contends that the Commission has made errors of law in its misapplication of the pertinent statutes. The main thrust of this argument is that Section 20.1 of the Act, 53 P.S. §23454, does not permit the City to discharge individual employees for economic reasons without taking specific measures to effect economy in other ways, i.e., first discharge *any* employee eligible for retirement; then, if still economically necessary, discharge *any* employee hired subsequent to the date the person in the position to be terminated was hired. Appellant contends that this construction is the plain meaning of the statute.

Section 20.1 reads, in pertinent part:

"If for reasons of economy, lack of funds, abolition of position or positions, or for any other reasons it becomes necessary for any city of the second class to reduce the number of employees then, the city shall follow the following procedure:

"First. If there are any employes eligible for retirement under the terms of any pension fund, then such reduction in number shall be made by retirement on pension of all the oldest in age and service;

"Second. If the number of employes eligible for retirement under the pension fund of said city, if any, is insufficient to effect the reduction in number desired by said city, or if there is no eligible person for retirement, or if no pension fund exists in such city, then the reduction shall be effected by suspending the last employe or employes regardless of title or classification, including probationers, provisional and substitute employes that have been appointed. Such removal shall be accomplished by suspending in numerical order, commencing with the last employe appointed, all recent ap-

pointees until such reduction shall have been accomplished. . . ." The court below found that appellant's strict construction and application of this section would effect absurd and unreasonable results. We must agree.

There is no merit to the construction of the Act espoused by appellant that once a city has determined a position to be economically unfeasible, it then must reevaluate the economic feasibility of all the positions held by employees eligible for retirement or hired after the holder of the position to be terminated to see if economy could be effectuated by termination of any of those positions. Such a requirement would fiscally handcuff any city. It is absurd to believe that the Legislature would intend such a result.

To adopt appellant's position would prevent a city from terminating an economically unfeasible position. When faced with an economic cutback, the city would be required to retain unneeded employees and discharge potentially essential ones who may be eligible for retirement or who are recently employed. The City's discretion of whom to retain and whom to fire would be severely curtailed. Such a situation is contrary to law, for the Supreme Court has held that the determination that a position should be abolished for reasons of efficiency and economy is *solely* within the judgment and discretion of the governing authority in whom the power to eliminate the office is vested. *Gaul v. Philadelphia*, 384 Pa. 494, 121 A. 2d 103 (1956). We hold that the City has properly complied with Section 20.1 of the Act, 53 P.S. §23454, and that the Commission has committed no error of law.

Appellant argues also that the independent posture of the Commission was violated because two of the Commissioners, as holdover appointees, were subject to "immediate dismissal" if the Mayor should make new appointments. Since the Commission was reviewing what is essentially the decision of the Mayor to dismiss ap-

6

pellant, the forum in which he was required to pursue his remedy had no freedom of activity apart from the Mayor and was so tainted as to deny him a fair hearing. Appellant, therefore, requests that the Commission's determination be declared illegal and a nullity.

This argument can be put to rest by the Act of March 22, 1927, P. L. 53, *as amended*, 53 P.S. §573, which provides: "Any officer of any municipal corporation of this Commonwealth who hereafter may be . . . appointed and having qualified shall hold said office until his successor is . . . appointed and duly qualifies." Since a Civil Service Commissioner is an officer of a municipal corporation, *Commonwealth ex rel. Kelley v. Clark*, 327 Pa. 181, 193 A. 634 (1937), this statute would apply, and the Commissioners were, therefore, lawfully serving in their capacities as Commissioners. Absent any proof of influence or wrongdoing, of which none exists on this record, their determinations are valid.

Since we have determined that the economic dismissal of appellant was valid, we need not reach the question of whether the City could properly amend its grounds for dismissal to add dismissal for cause to the economy reasons they had previously alleged.

Accordingly, we affirm.