Robert A. **MILISITS**

v.

**CITY OF PITTSBURGH, Appellant.**

Commonwealth Court of Pennsylvania.

Argued March 13, 1997.
Decided May 20, 1997.
Reargument Denied July 17, 1997.

---

Marianne S. Malloy, Pittsburgh, for appellant.

Paul D. Boas, Pittsburgh, for appellee.

Before McGINLEY and FLAHERTY, JJ., and NARICK, Senior Judge.

FLAHERTY, Judge.

The City of Pittsburgh (City) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) reversing the decision of the City of Pittsburgh Civil Service Commission (Commission) and ordering the reinstatement of Robert A. Milisits with back pay. We reverse.

On August 5, 1994, Milisits, who is a civil service employee, was laid off from his position as a paralegal in the City's Law Department (Department) pursuant to a reduction in the Department's work force due to economic reasons. Milisits appealed to the Commission, arguing that there was a less senior paralegal who should have been laid off before him. On October 13, 1994, a public hearing was held before the Commission, at which both Milisits and the City presented evidence. At the hearing, the City Solicitor testified that in order to comply with a mandate from the Mayor's Budget Office to reduce the 1994 budget of the Department by ten percent, the tax-related duties performed

by one of the Department's paralegals had been transferred to the City's Department of Finance. As a result, the Department laid off Milisits, who was considered to be the least senior "full-time" paralegal employed by the Department.

Before the Commission, Milisits argued that there was a less senior paralegal, David Hickman, who was employed by the Department and should have been laid off before him in accordance with Section 20.1 of the General Civil Service portion of the Second Class City Code (Code).[1] Hickman, however, was hired as a "part-time" paralegal by the City. As such, Hickman is paid a lower wage than the full-time paralegals and, unlike them, he does not receive paid health, dental and vision insurance or paid vacation, personal days and holidays. He does, however, work a substantial amount of hours and his duties vary little, if any, from Milisits.[2] Before the Commission, Milisits argued that despite the label given to Hickman by the City, Hickman was in fact a full-time employee; therefore, he should have been laid off prior to Milisits.

The Commission denied Milisits' appeal, reasoning that it has relied upon the classification given to employees by the City in the hiring process in determining if an employee is part-time and that, historically, it has no jurisdiction over part-time employees; therefore, the Commission found that Milisits was the least senior person in his position.

■ On appeal, the trial court reversed and ordered that Milisits be reinstated with full back pay. The trial court concluded that although Hickman was called "part-time," he was in reality a full-time employee due to the hours he worked under Section 180 of the City Code, which the trial court stated defines part-time employees as those who are classified as such and those working less than 180 days per year.[3] As such, it found

1. Act of May 23, 1907. P.L. 206, *added by* Section 1 of the Act of June 20, 1947, P.L. 663, *as amended,* 53 P.S. § 23454.

2. The City stipulated at the hearing that Hickman worked 1,395 hours in the nine-month period from January 1, 1994 through October 7, 1994. (R.R. at 32a–33a.) Counsel for Milisits

calculated this amount of time to average thirty-five hours per week. (R.R. at 26a, 27a.)

3. We note that, contrary to the opinions of the Commission and the trial court, Section 180 of the Pittsburgh Code does not define part-time employees but merely provides that part-time employees and those working less than 180 days

that Hickman and Milisits were in the same classification for purposes of layoffs. The City now appeals to this court.[4]

On appeal, the City presents the following issues for our review: (1) whether "full-time" and "part-time" employees with the same job title hold the same position for purposes of layoffs during an economic reduction in the work force; (2) whether the trial court erred by determining that the less senior employee was not a part-time employee; (3) whether the trial court erred by ordering reinstatement with full back pay when the record contains no evidence regarding the current existence of paralegal positions in the City's Law Department.

■ With respect to the first issue raised by the City, Section 20.1 of the Code provides, in relevant part, as follows:

If for reasons of economy, lack of funds, abolition of position or positions, or for any other reasons it becomes necessary for any city of the second class to reduce the number of employes then, the city shall follow the following procedure:

. . . .

. . . the reduction shall be effected by suspending the last employe or employes regardless of title or classification, including probationers, provisional and substitute employes that have been appointed. Such removal shall be accomplished by suspending in numerical order, commencing with the last employe appointed, all recent appointees until such reduction shall have been accomplished. . . .

53 P.S. § 23454.

The requirements of Section 20.1 of the Code were refined by this court in *Fusaro v. Civil Service Comm'n of Pittsburgh*, 16 Pa. Cmwlth. 1, 328 A.2d 916 (1974). In that case we upheld the City's layoff of a "streetlighting engineer" due to the abolishment of his position for economic reasons. The employee argued that the City could not discharge individual employees for economic reasons under Section 20.1 without first discharging *any* employee hired subsequent to the date the person in the position to be terminated was hired. The employee asserted that once the City determined that a position was economically unfeasible, Section 20.1 required it to reevaluate the economic feasibility of all positions held by city employees hired after the holder of the position to be terminated to see if the termination of those positions would effectuate the desired savings.

In rejecting the need for such a city-wide determination of the economic feasibility of all positions, we stated in *Fusaro* that such an interpretation of Section 20.1 would be absurd and would "fiscally handcuff any city." 328 A.2d at 918. We reasoned that "[t]o adopt appellant's position would prevent a city from terminating an economically unfeasible position. When faced with an economic cutback, the city would be required to retain unneeded employees and discharge potentially essential ones." *Id.* at 918–19. In so concluding, we cited *Gaul v. Philadelphia*, 384 Pa. 494, 121 A.2d 103 (1956), for the proposition that "the determination that a position should be abolished for reasons of efficiency and economy is *solely* within the judgment and discretion of the governing authority in whom the power to eliminate the office is vested." *Fusaro*, 328 A.2d at 919. As such, the practical effect of our decision in *Fusaro* was to limit the application of the seniority analysis mandated by Section 20.1 to those employees who hold the same "position" which is sought to be abolished by the City for economic reasons.

Here, the City asserts that although "full-time" and "part-time" paralegals have the same job title, they hold different positions for purposes of determining seniority because: (1) paralegals classified as "part-time" by the City are in the "exempt" civil service classification under the Commission's rules, whereas those classified as "full-time" by the

per year are included in the "noncareer service" classification. Pittsburgh, Pa., Code § 180.

**4.** *Under our scope of review, which is identical to that of the trial court, the Commission's decision must be affirmed unless constitutional rights were violated, an error of law was committed,* the provisions in the Local Agency Law were violated in a proceeding before the agency, or the findings of fact are not supported by substantial evidence. *Foley v. Civil Service Comm'n of Philadelphia*, 55 Pa.Cmwlth. 594, 423 A.2d 1351, 1353 (1980).

City are in the "non-competitive" classification (R.R. at 52a.); and (2) paralegals considered "part-time" by the City have different terms and conditions of employment than full-timers, including lower wages and no paid insurance benefits or paid time off.

To determine whether the two employees at issue hold the same or different positions for purposes of seniority, we believe that it is crucial to first dispense with the labels of "full" or "part-time" and look to the totality of the circumstances under which the employees were hired and worked. In so doing, we conclude that the terms and conditions of employment for the two employees vary to such a degree as to make the positions held by them different for purposes of a seniority analysis.

While Hickman works a substantial amount of hours and performs the same work as Milisits, Hickman receives a lower wage than Milisits and does not receive any paid vacation, personal days or holidays. In addition, under the terms of Hickman's employment, the City does not provide the paid health, dental or vision insurance that it does for Milisits. In essence, the job for which Hickman was hired should have been more properly labelled since it is more in the nature of an "economy rate" paralegal, rather than "part-time" in the sense that it was to be based on hours worked and rather than the career-oriented position filled by Milisits. As their terms of employment from the outset placed Hickman and Milisits in different tracks of employment, we conclude that when all of the circumstances surrounding each individual's employment with the City are considered, they warrant the conclusion that Hickman and Milisits held different positions for purposes of seniority under Section 20.1 of the Code.

▆ As such, the determination of whether to abolish one of the "full-time" career paralegal positions or the non-career, exempt "part-time" paralegal position was solely within the judgment and discretion of the City. *Fusaro.* Having determined that it was necessary to eliminate one of the "full-time" paralegal positions to comply with the mandated budget reduction, the City was required by Section 20.1 to lay off Milisits, who was the least senior "full-time" paralegal in that classification in the Department. Therefore, the Commission's conclusion was correct, and the trial court erred by concluding, based on an erroneous statement of Section 180 of the Pittsburgh Code, that Hickman and Milisits held the same position for purposes of seniority in times of economic layoffs.

As the trial court's error requires us to reverse, we need not consider the City's remaining assertions of error. For the foregoing reasons, the order of the trial court is reversed.

### ORDER

NOW, May 20, 1997, the order of the Court of Common Pleas of Allegheny County, dated May 22, 1996, at No. SA 94–4252, is hereby reversed.