741 A.2d 180

**Elaine SADOWSKI, Appellant,**

v.

**CITY OF PITTSBURGH, Appellee.**

Supreme Court of Pennsylvania.

Argued March 8, 1999.

Decided Oct. 27, 1999.

Ronald A. Berlin, Berlin, Boas & Isaacson, Pittsburgh, for Elaine Sadowski.

Marianne Malloy, City Law Dept., for City of Pittsburgh.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ

## OPINION

NIGRO, Justice.

■ In this appeal, Appellant Elaine Sadowski argues that she was improperly dismissed from her civil service job with the City of Pittsburgh (City). We agree and therefore, reverse.

Ms. Sadowski, a civil service employee, worked as the Facilities Management Coordinator in the City's Department of General Services (Department). As Facilities Management Coordinator, Sadowski, who has a master's degree in energy

resources, worked on tasks related to energy resource management and conservation. Sadowski was one of 200 employees in the Department and was more senior than at least 150 of those employees. During her years at the Department, Sadowski saved the City roughly six million dollars.

In November of 1995, Sadowski received a letter from the Director of the Department of General Services (Director) informing her that her employment with the City would terminate on December 31, 1995. The letter stated: "It is important that you know that this layoff is solely for reasons of economy and efficiency and not in any way a reflection on your performance."

Sadowski appealed her discharge to the Civil Service Commission of the City of Pittsburgh (Commission), alleging wrongful termination in violation of section 20.1 of the General Civil Service portion of the Second Class City Code (section 20.1),[1] and seeking reinstatement of her position. The Commission held a public hearing on the matter on January 18, 1996. At the hearing, the Director testified that Sadowski's position had been eliminated in response to extensive funding cuts in the Department's capital budget. Sadowski, on the other hand, testified that the discharge had been based on "political" considerations stemming from a variety of work-related disagreements she had had with the Director. Despite the City's allegations to the contrary, Sadowski contended that the discharge could not have been for economic reasons since, in the year she was laid off, she would have generated savings to the City far in excess of her $37,000 a year salary. Following the hearing, the Commission denied Sadowski's appeal, finding that the City had not abused its discretion in discharging Sadowski.

Along with her appeal to the common pleas court, Sadowski filed a motion to supplement the record with after-discovered evidence. The motion alleged that Sadowski had learned, at some point after the Commission's hearing, that the Department was seeking bids on contracts for the undertaking of

1. Act of May 23, 1907, P.L. 206, section 20.1, as amended by the Act of June 20, 1947, P.L. 663, Section 1, 53 P.S. § 23454.

some duties that she had previously performed as Facilities Management Coordinator. The common pleas court allowed both sides to supplement the record by additional testimony, which was conducted by deposition and entered into evidence. Upon *de novo* review,[2] the common pleas court concluded that the record as a whole failed to provide substantial evidence to support the City's contention that Sadowski's layoff had been for reasons of economy. The court, therefore, reversed the decision of the Commission and ordered that Sadowski be reinstated to her position with full back pay.

The City appealed to the Commonwealth Court, which reversed the order of the common pleas court. In so doing, the Commonwealth Court concluded that Sadowski had failed to sufficiently counter the substantial evidence presented by the City that she had been laid off for economic reasons. Sadowski filed a Petition for Allowance of Appeal. We granted allocatur to determine whether the Commonwealth Court employed the proper standard of review and whether the Commonwealth Court erred in finding that Sadowski had properly been discharged from her position with the City.

Sadowski first contends that when a court hears an appeal from a government agency dismissal *de novo*, the burden is exclusively on the agency to prove all of the elements necessary to support the termination. She argues that the Commonwealth Court, in reviewing the common pleas court's *de novo* review of her dismissal, improperly placed the burden on

**2.** When a common pleas court permits the record to be supplemented, it must then conduct a *de novo* review of the record. *See* 2 Pa.C.S. § 754. In the instant case, the common pleas court's decision implicates the issue of whether after-discovered evidence may serve as an appropriate basis for invocation of *de novo* review pursuant to section 754(a) of the Local Agency Law. However, the validity of the *de novo* review was not raised in the Petition for Allowance of Appeal nor in any cross Petition for Allowance of Appeal and therefore, allocatur was not granted on this issue. *See* Pa. R.A.P. 1115(a)(3) (only questions set forth in petition will ordinarily be considered by court in event appeal is allowed). Nonetheless, resolution of this issue is unnecessary to the disposition of this appeal, since, as is made clear below, the supplementary portion of the record developed in the common pleas court is not the basis for our decision.

her to prove that she was discharged for reasons other than economy.[3] We disagree.

As an initial matter, we agree with Sadowski that in a *de novo* review of a civil service employee's dismissal for reasons of economy, the court must place the burden of going forward on the governmental employer. *See Appeal of Lawrence Township Board of Supervisors,* 117 Pa.Cmwlth. 508, 544 A.2d 1070, 1074 (1988) (when lower court hears appeal from governmental agency *de novo,* burden is on governmental body to prove all elements necessary to support its adjudication). This is consistent with the burden an employer has when such a dismissal matter is first heard by the Commission. *See, e.g., City of Pittsburgh Civil Service Commission v. Beaver,* 12 Pa.Cmwlth. 353, 315 A.2d 672, 674 (1974) (City has burden of establishing by substantial evidence that there was just cause for civil service employee's dismissal); *City of Erie v. Kelley,* 82 Pa.Cmwlth. 339, 474 A.2d 1226, 1227 (1984) (dismissal of civil service employee for reasons of economy constitutes "just cause" for termination). *See also Gresock,* 698 A.2d at 166 (*de novo* hearing is a "new hearing or hearing for the second time, contemplating an entire trial in the same manner in which the matter was originally heard"). However, once the governmental agency presents substantial evidence that the termination was for economic reasons, the burden properly shifts to the employee to show either that the evidence was not substantial or the reasons for the discharge not proper. *See Crede v. City of Pittsburgh,* 355 Pa. 369, 49 A.2d 700, 703 (1946) (where agency established just cause for termination, burden of proof shifts to employee to prove dismissal was not for lawful reasons). *Accord* 4 Pa.Code § 105.15(e) (under Civil Service Act, 71 P.S. § 741.1 *et seq.,* appointing authority shall go forward to establish charge on which personnel action was based and if the appointing au-

---

**3.** On appeal, when additional testimony has been admitted into evidence by the common pleas court, the court's review is limited to the determination of whether the common pleas court abused its discretion or committed legal error. *Gresock v. Pittsburgh Civil Service Commission,* 698 A.2d 163, 165 n. 1 (Pa.Commw.1997).

thority establishes prima facie case, the employee shall then be afforded opportunity of presenting his case).

■ Here, the Commonwealth Court did not engage in improper burden-shifting, as Sadowski alleges. Rather, the court found that the common pleas court erred in determining that the record as a whole did not provide substantial evidence that Sadowski had been terminated for reasons of economy. To support its finding, the court cited to portions of the record establishing that the City had presented substantial evidence that Sadowski's dismissal had been based on economic considerations. The Commonwealth Court then noted that Sadowski, in light of the substantial evidence presented by the City, had failed to show that her termination had been for the political reasons that she alleged. Since the Commonwealth Court first found that the City had carried its burden of proof as it related to presenting substantial evidence, the court, in its review of the record, properly allocated the burden to Sadowski to demonstrate that her termination was not for economic reasons. Thus, Sadowski's claim that the Commonwealth Court erroneously placed the burden on her is without merit.

Sadowski next argues that she was wrongfully terminated in violation of section 20.1 of the General Civil Service portion of the Second Class City Code (Code). We agree.

Section 20.1 of the Code provides in pertinent part:

If for reasons of economy, lack of funds, abolition of position or positions, or for any other reasons it becomes necessary for any city of the second class to reduce the number of employes then, the city shall follow the following procedure: . . . .

Second. If the number of employes eligible for retirement under the pension fund of said city, if any, is insufficient to effect the reduction in number desired by said city, or if there is no eligible person for retirement, or if no pension fund exists in such city, then the reduction shall be effected by suspending the last employe or employes regardless of title or classification, including probationers, provisional and

substitute employes that have been appointed. Such removal shall be accomplished by suspending in numerical order, commencing with the last employe appointed, all recent appointees until such reduction shall have been accomplished.

53 P.S. § 23454.

Thus, the plain language of section 20.1 clearly mandates that the City, when terminating employees for reasons of economy, must remove the least senior employees first, regardless of title or classification.

The Commonwealth Court, however, did not follow the plain language of section 20.1. Instead, in addressing the seniority issue below, the court, relying on its decision in *Fusaro v. Civil Service Commission of Pittsburgh,* 16 Pa.Cmwlth. 1, 328 A.2d 916 (1974), stated "with regard to 53 P.S. § 23454 [section 20.1] . . . a city need not reevaluate the economic feasibility of all jobs held by retirement-eligible employees or employees hired after the employee in the job determined to be economically unfeasible." *Pittsburgh v. Sadowski,* 707 A.2d 248 (Pa.Commw.1998).

Sadowski claims that the Commonwealth Court in the instant matter erred by relying on its decision in *Fusaro* because the *Fusaro* court misinterpreted both section 20.1 and this Court's holding in *Gaul v. Philadelphia,* 384 Pa. 494, 121 A.2d 103 (1956). In *Fusaro,* a civil service employee with the City of Pittsburgh appealed his economic dismissal on the grounds that it violated the seniority requirements of section 20.1. Specifically, the employee argued that the City could not, under the plain language of section 20.1, discharge individual employees for economic reasons without first discharging any employee hired subsequent to the date the person in the position to be terminated was hired. In rejecting the employee's argument, the *Fusaro* court essentially held that section 20.1 should not be read literally because doing so would unduly limit the City's discretion as to whom to retain and whom to fire and would violate this Court's holding in *Gaul.* The *Fusaro* court stated:

the Supreme Court has held that the determination that a position should be abolished for reasons of efficiency and economy is solely within the judgment and discretion of the governing authority in whom the power to eliminate the office is rested. *Gaul v. Philadelphia,* 384 Pa. 494, 121 A.2d 103 (1956).

*Fusaro.*

We agree with Sadowski that *Fusaro* misconstrues *Gaul.* In the first instance, *Gaul* did not involve a civil service employee, and therefore, did not involve a civil service statute like the one at issue in *Fusaro* and the instant matter. Secondly, *Gaul* did not hold, contrary to the *Fusaro* Court's interpretation, that decisions to terminate for economic reasons cannot be challenged because they are solely within the discretion of the governmental employer. Rather, the *Gaul* Court held that, although a governmental employer in its own judgment may eliminate a position for reasons of economy or efficiency, such a decision can still be challenged by the discharged employee by showing that the termination was not made in good faith or in the interest of economy.[4] Certainly, *Gaul* in no way stands for the proposition that the plain language and intent of the Civil Service Code can be ignored when a governmental employer dismisses an employee for reasons of economy.

In effect, the *Fusaro* decision disregards the plain language of the Code and limits the application of the seniority analysis mandated by section 20.1 to those employees who hold the same exact position which is sought to be abolished by the City for economic reasons. *See Milisits v. City of Pittsburgh,* 695 A.2d 895, 897 (Pa.Commw.1997) (practical effect of *Fusa-*

---

4. For example, under *Gaul,* a governmental employer clearly has the discretion to decide that economic cutbacks are necessary and to base an employee's dismissal on economic grounds. However, such a dismissal does not become immune from challenge simply because the employer advances economic justifications for the dismissal. Rather, the employee is still entitled to challenge the dismissal on grounds that it was based on political or other improper reasons or otherwise violates the dictates of the Code. To the extent that *Fusaro* is read to hold that economic layoffs cannot be challenged because they are solely within the discretion of the governmental employer, it is overruled.

*ro*'s refinement of section 20.1 is to restrict seniority analysis to those who hold same position as the person being terminated for reasons of economy). Relying on *Fusaro*, the City essentially argues that since Sadowski was the only person who held the position of Facilities Management Coordinator in the Department, a position determined by the City to be "economically unfeasible," the City did not violate the seniority requirements of section 20.1 by discharging Sadowski. We disagree.

The Code states in the clearest of terms that the City, in reducing the size of its work force for economic reasons, must lay off "the last employe or employes regardless of title or classification ... commencing with the last employe appointed...." 53 P.S. § 23454. The rules of statutory construction require us to follow the plain language of section 20.1, which directs the City to consider only seniority when removing civil service employees for economic reasons and to remove the least senior employees first regardless of their title or classification. *See* 1 Pa.C.S. § 1921(b) (when words of statute are clear and unambiguous, courts must follow letter of the law, and not the spirit, to arrive at the legislature's intent); *Gresock*, 698 A.2d at 167–68 (when laying off City employees for economic reasons, plain language of Civil Service Code requires City officials to consider only seniority and remove least senior employees first).[5]

---

**5.** To avoid complying with the plain language of the statute, the *Fusaro* court essentially found that strict compliance and application of section 20.1 would lead to absurd results by forcing the City to retain employees who are no longer needed simply because of seniority. However, the legislature's clear intention in enacting section 20.1 was to have seniority be the sole consideration when removing employees for reasons of economy. Prior to the enactment of section 20.1, the regulation governing the discharge of civil service employees, Civil Service Rule 10, Section 4, allowed a governmental employer to consider factors in addition to seniority when determining which employees to lay off because of fiscal restructuring. Specifically, Civil Service Rule 10, Section 4 provided that if no employees were eligible for retirement, the heads of departments must consider "the capability, efficiency, and the length and quality of all other employees in the same grade, class and employment, and must discharge, reduce or furlough, in ascending order of merit, those who are least meritorious." *Wagner v. City of Pittsburgh*, 352 Pa. 647, 650, 44 A.2d 261, 262 (1945) (quoting 53 P.S.

This Court has reiterated the principle that no civil service employee may be discharged in any manner or by any means other than those specified by the statutes regulating civil service. *Borough of Blawnox Council v. Olszewski*, 505 Pa. 176, 184, 477 A.2d 1322, 1326 (1984); *see also* 53 P.S. § 23461 (express purpose of Code is to "furnish a *complete and exclusive* system for the appointment, promotion, reduction, transfer, removal or reinstatement of ... employees in the civil service of the cities of the second class") (emphasis added). Here, there is no dispute that Sadowski had more seniority than 150 other employees in the Department who had not been laid off. Since the Commonwealth Court ignored the plain language and intent of section 20.1 by failing to consider seniority in reviewing whether Sadowski had been improperly discharged from her position with the Department, the order of the Commonwealth Court is reversed.

§ 9395.1 *et seq.*). Clearly, section 20.1 of the current Code reflects the legislature's intent to require a governmental employer to consider only seniority status when reducing its staff in response to economic considerations.