Paul A. ABEL, Robert C. Young, Thomas M. Clancy, Jr., James V. McGraw, Mark Yourick, Allen R. Bower, Joseph Hinda, Jr., Kenneth S. Welsh, Joseph T. Terlecki and Bruce E. Buskirk

v.

CITY OF PITTSBURGH, Appellant.

Commonwealth Court of Pennsylvania.

Argued Oct. 18, 2005.

Decided Dec. 21, 2005.

**2**

Diego Correa, Pittsburgh, for appellant.

Timothy E. Finnerty, Pittsburgh, for appellees.

BEFORE: LEADBETTER, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

The City of Pittsburgh (City) appeals the decision of the Court of Common Pleas of Allegheny County (trial court) ordering the reinstatement of Paul A. Abel and eleven other employees (Employees)[1] to their employment with the City. The trial court held that the City's Civil Service Commission erred in applying the seniority and furlough provisions of the collective bargaining agreement (CBA) that covered Employees, rather than the comparable provisions in what is commonly referred to as the Second Class City Code, Act of March 7, 1901, P.L. 20, *as amended*, 53 P.S. §§ 22101–25851. In this case, we con-sider the appropriate choice of law to be made where City employees are furloughed.

The facts are not in dispute. Because of insufficient funds, the City concluded that it would not be able to meet payroll through the end of 2003 without reducing the workforce immediately. As a consequence, on August 15, 2003, the City notified approximately 700 City employees of their pending layoff from their positions with the City. These individuals, including Employees, are represented by the Pittsburgh Joint Collective Bargaining Committee (Union).[2]

In determining which employees would be laid off, the City applied the seniority and layoff provisions of the CBA, that require the City to lay off employees by job title and individual department, in reverse order of seniority, within three separate seniority units, consisting of laborers, drivers and crafts. Section 8(E)(2) of the CBA, Reproduced Record at 44a–45a (R.R.——-).[3] In contrast, the layoff provisions in the General Civil Service chapter of the Second Class City Code (Civil Service Act), Act of May 23, 1907, P.L. 206, *as amended*, 53 P.S. §§ 23431–23462, provide that the last City employee appointed is the first to be laid off, without regard to job title or classification. Section 20.1 of the Civil Service Act, 53 P.S. § 23454.[4] Employees filed an appeal with the Pittsburgh Civil Service Commission to challenge the City's action.[5]

---

1. Eleven union employees filed a joint appeal to the trial court: Paul A. Abel, Robert C. Young, Thomas M. Clancy, Jr., James V. McGraw, Mark Yourick, Allen R. Bower, Joseph Hinda, Jr., Kenneth S. Welsh, Joseph T. Terlecki and Bruce E. Buskirk; all began work as laborers and rose up through the ranks to skilled crafts such as bricklayers, carpenters and cement finishers.

2. The Union has filed an *amicus curiae* brief in support of the City's appeal.

3. The full text of Section 8(E)(2) is quoted *infra*.

4. Added by the Act of June 20, 1947, P.L. 663.

5. The CBA provides union members with the option to address complaints or disputes under the CBA's grievance process or through the Civil Service appeal process. Section 5(E) of the CBA, R.R. at 34a.

Employees did not claim that their furlough violated the CBA. Rather, they contended that it violated the Civil Service Act, which protected them against furlough by virtue of their length of service. They noted that many City employees, with far less service, were unaffected by the layoff. The Civil Service Commission upheld the City's furlough of Employees because it concluded that the CBA, not the Civil Service Act, governed the layoffs of Union members. Accordingly, years of service in a particular classification, not years of service in the abstract, determined the order of layoff. In so ruling, the Commission relied upon "the judicially mandated preference for [applying] the terms of the collective bargaining agreement," thereby giving deference to the intent of the parties and the bargaining process. Civil Service Commission Opinion at 4. The trial court reversed. Observing that the Civil Service Act is intended to establish "a complete and exclusive system" for the removal of employees, Section 28 of the Civil Service Act, 53 P.S. § 23461, the trial court held that the layoff provisions of the CBA, which conflicted with the "exclusive" layoff procedures of the civil service system, were invalid and, thus, unenforceable.

On appeal to this Court, the City argues the trial court erred in its choice of law because the Public Employe Relations Act (Act 195) [6] made layoff a matter of collective bargaining not limited by the Civil Service Act. It offers two supporting arguments. First, the City contends that Employees, who enjoyed the benefits of the CBA, are estopped from contending that its terms are superceded by the Civil Ser-

vice Act, thereby requiring other Union members to be furloughed.[7] Second, the City contends that under its home rule charter, it is authorized to adopt employee management systems inconsistent with the Civil Service Act, so long as they do not violate the Home Rule Charter and Optional Plans Law, 53 Pa.C.S. §§ 2901–2984, (Home Rule Law). Finally, as an alternate theory for reversing the trial court, the City argues that this Court lacks subject matter jurisdiction to hear this matter because under Act 195 Employees were required to submit their dispute to mandatory arbitration.

We address, first, the City's choice of law argument, which is the heart of this appeal. The City notes that it laid off Employees in accordance with the seniority and layoff provisions of the CBA, which have been used since 1984 to determine layoffs. The City contends that it laid off Employees correctly because the CBA, not the Civil Service Act, governed their furlough.

We begin our analysis with the operative language of the applicable statute and contract. Section 20.1 of the Civil Service Act provides, in relevant part, as follows:

*If for reasons of economy, lack of funds,* abolition of position or positions, or for any other reasons it becomes necessary for any city of the second class to reduce the number of employes then, *the city shall follow the following procedure:*

\* \* \*

... If the number of employes eligible for retirement under the pension fund of said city, if any, is insufficient to effect the reduction in number desired by said

6. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101–2301.

7. Employees contend the City waived the issue of estoppel. Our review of the record, however, indicates that the issue of estoppel was preserved through the City's reliance on *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh,* 481 Pa. 66, 391 A.2d 1318 (1978).

city, then the reduction shall be effected by suspending the last employe or employes *regardless of title or classification*. . . . .

53 P.S. § 23454 (emphasis added). In contrast, Section 8 of the CBA states, as follows:

8. E. LAYOFFS

(1) *In the event of layoffs, the City shall reduce position(s) by job title and individual department.* The employees in the job title with the least continuous service in the seniority unit shall be subject to layoff under 8(E)(2) or transfer under 8(E)(3) whichever is applicable.

(2) The City shall layoff employees not in the laborers or drivers seniority unit by job title throughout the City in inverse order of continuous service in the seniority unit. The City shall layoff all other employees with the least continuous service in the same seniority until as the reduced position(s) from any department throughout the City, regardless of job title. No employee shall be laid off from a position in a job title that has not been reduced under 8(E)(1) if no senior employee eligible for transfer under § 8(E)(3) is qualified to fill the position.

Section 8(E)(1) and (2)of the CBA, R.R. 44a–45a (emphasis added).

Faced with this direct and irreconcilable conflict, the trial court turned to Section 28 of the Civil Service Act, which states as follows:

All acts and parts of acts of assembly of this commonwealth, general, special, or local, in relation to the civil service of cities of the second class, inconsistent with this act be and the same are hereby repealed. *It is intended by this act to furnish a complete and exclusive system for the* appointment, promotion, reduction, transfer, *removal,* or reinstatement *of all officers, clerks, laborers, and other employes in the civil service of the* cities of the second class in this commonwealth.

53 P.S. 23461(emphasis added). Because it found no air in this legislative directive, given in 1907, long before public employees were permitted to bargain collectively, the trial court held that the layoff provision in Section 20.1 of the Civil Service Act prevails over Section 8(E) of the CBA. The trial court found support for its conclusion in a recent ruling of our Supreme Court, *Sadowski v. City of Pittsburgh,* 559 Pa. 387, 741 A.2d 180 (1999).

In *Sadowski,* a City employee, who was furloughed by reason of economic considerations, claimed that the City's action violated Section 20.1 of the Civil Service Act. This Court construed Section 20.1 to mean that reductions by seniority applied to employees performing the exact same job. The Supreme Court disagreed and reversed. It reiterated the principle that no civil service employee may be discharged in any manner or by any means other than those specified by the application of the relevant civil service statute. Section 20.1 of the Civil Service Act, 53 P.S. 23454, states in the clearest of terms that the City, in reducing the size of its work force for economic reasons, must lay off "the last employee" hired, regardless of title or classification. Accordingly, the Supreme Court rejected this Court's contrary interpretation.

*Sadowski* is relevant to the construction of Section 20.1, but it is inapposite here because Sadowski was not covered by a collective bargaining agreement. A different analysis is appropriate where, as here, there is a collective bargaining agreement in place giving Employees protections and duties in addition to those provided under the Civil Service Act. The City contends, in fact, that Employees are estopped from

even raising a claim that the seniority and layoff provisions in the CBA are not binding on them.

*Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh*, 481 Pa. 66, 391 A.2d 1318 (1978), is instructive on the estoppel issue. In that case, an employee filed a grievance with the City after his discharge. After exhausting all steps in the contractual grievance procedure, the employee then requested that the City submit the dispute to binding arbitration, as provided in the collective bargaining agreement. The City refused, and the Union responded with a suit in equity to compel the City to submit to arbitration. The City filed preliminary objections, asserting that the discharge was not an arbitrable issue because the discharge was governed exclusively by the Civil Service Act.[8] The preliminary objections were sustained.

Our Supreme Court reversed. It held that the City could not challenge the grievance arbitration provisions in the collective bargaining agreement, to which it had agreed, by asserting after-the-fact that the contract violated the Civil Service Act and Section 703 of Act 195.[9] The Court emphasized the importance of grievance arbitration in the relationship between the public employer and employee. It explained as follows:

> The relationship between the public employer and the designated bargaining unit is one which must be sustained for years, during which a number of contract negotiations will occur. To sustain a harmonious relationship it is necessary for each of the parties to be pliable and willing to recognize the other's position. Nothing could be more disruptive to such a relationship than a demonstration of bad faith bargaining on the part of one of the parties. *To permit an employer to enter into agreements and include terms such as grievance arbitration which raise the expectations of those concerned, and then to subsequently refuse to abide by those provisions on the basis of its lack of capacity would invite discord and distrust* and create an atmosphere wherein a harmonious relationship would virtually be impossible to maintain.

*Id.* at 74, 391 A.2d at 1322 (emphasis added). Accordingly, the Supreme Court held that, as a matter of sound policy, collective bargaining agreements are binding on the public employer even where not fully consonant with statutory law.[10]

■ The City makes a good point that under *Pittsburgh Joint Collective Bargaining Committee*, Employees, who enjoyed the benefits of collective bargaining, should be estopped from arguing that the CBA is illegal in other respects. If the City is so estopped, it asks why, then, should Employees not be similarly estopped. Further, *Pittsburgh Joint Collective Bargaining Committee* stands as strong support for the principle that under Act 195, collective bargaining agreements with provisions that are not in accordance

---

8. Ironically, in this appeal, the City takes the opposite position, a point on which the Union, *amicus curiae,* does not agree with the City.

9. Section 703 provides generally that parties to a collective bargaining agreement cannot implement a provision in a collective bargaining agreement that is contrary to a statute.

43 P.S. § 1101.703. The full text of Section 703 is set forth *infra.*

10. *See also Grottenthaler v. Pennsylvania State Police*, 488 Pa. 19, 410 A.2d 806 (1980) (certain pension-related provisions of a collective bargaining agreement enforceable despite countervailing terms of the State Employees' Retirement Code).

with other statutes,[11] must nevertheless be upheld in the interest of advancing good faith labor negotiations.[12]

In response, Employees argue that they are not estopped because this is their first meaningful opportunity to challenge the layoff provisions in the CBA. Further, they contend that Act 195 forbids public employers and employees from negotiating contract terms that violate statutory law. Section 703 of Act 195 specifically states as follows:

> The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters.

43 P.S. § 1101.703. Because the layoff provisions in the CBA violate the "exclusive" civil service system, Employees contend that those provisions are nullified under authority of Section 703. Thus, Employees contend that the trial court properly used the severability clause in the CBA to excise the offending provision from the agreement.

■ The City's estoppel argument need not be decided because we believe that under Act 195, seniority and layoff were proper items of collective bargaining. Employees' argument to the contrary misapprehends the meaning of Section 703 of Act 195.

Section 703 of Act 195 has been the subject of definitive interpretation by the Pennsylvania Supreme Court. In *Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975), the meaning of Section 703 was raised in the context of a teachers' collective bargaining agreement. The Public School Code of 1949[13] established an extensive and comprehensive system to meet the educational needs of the citizens of the Commonwealth. This Court held that the duties given to a public school board could not be the subject of collective bargaining. Because it was the duty of the school board to set teacher salaries, teacher salaries could not be established by negotiation. Thus, Section 701 of Act 195,[14] which mandates public

---

11. The purpose of Act 195 is to promote orderly and constructive relationships between all public employers and their employees, to provide adequate means for the minimization and resolution of disputes between the public employer and its employees and to facilitate the development of harmonious relationships between the public employer and its employees. *Pittsburgh Joint Collective Bargaining Committee*, 481 Pa. at 70, 391 A.2d at 1320 (citing Section 101 of Act 195, 43 P.S. § 1101.101). *See also Fraternal Order of Police, E.B. Jermyn Lodge No. 2 v. Hickey*, 499 Pa. 194, 452 A.2d 1005 (1982).

12. The Court never reached the issue of whether there was actually a conflict between the collective bargaining agreement and the Civil Service Act such that the agreement's implementation would be prohibited by Section 703 of Act 195. *Pittsburgh Joint Collec-*

*tive Bargaining Committee*, 481 Pa. at 70, n. 5, 391 A.2d at 1320, n. 5.

13. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101–27–2702.

14. Section 701 of Act 195 provides:

> Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes *to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment*, or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached but such obligation does not compel either party to agree to a proposal or require the making of a concession.

employers and representatives of public employees to negotiate "with respect to wages, hours and other terms and conditions of employment" was found not to apply.

The Supreme Court disagreed, finding that, notwithstanding the Public School Code mandate, a school board was required to negotiate wages. It explained why Section 703 did not compel another result.

> The mere fact that a particular subject matter may be covered by legislation does not remove it from collective bargaining under section 701 if it bears on the question of wages, hours and conditions of employment. We believe that section 703 only prevents the agreement to and implementation of any term which would be in violation of or inconsistent with any statutory directive.

*State College Area School District*, 461 Pa. at 508, 337 A.2d at 269. It further explained that in determining a "violation . . . with any statutory directive," courts must examine that "statutory directive" as follows:

> [I]tems bargainable under section 701 are only excluded under section 703 where other applicable statutory provisions *explicitly and definitively prohibit* the public employer from making an agreement as to that specific term or condition of employment.

*Id.* at 510, 337 A.2d at 270 (emphasis added).

■ Thus, *State College Area School District* teaches that Section 703 prohibits parties from collectively bargaining a term that another statute "explicitly and definitively prohibit[s] the public employer from making." *Id.* In the absence of a direct

prohibition, an issue must be negotiated under Section 701 if it impacts wages, hours and other terms or conditions of employment. Notably, seniority and furloughs have been held to be matters of fundamental concern, included in the Section 701 list of wages, hours, and other terms and conditions of employment. *See, e.g., Commonwealth v. Pennsylvania Labor Relations Board,* 125 Pa.Cmwlth. 114, 557 A.2d 1112 (1989).

■ The Civil Service Act does not "explicitly and definitively" prohibit the City from collectively bargaining the issue of seniority and layoffs. Section 20.1 of the Civil Service Act establishes a procedure for layoffs, but it does not expressly prohibit the City from making any other agreement as to layoffs and seniority with those employees represented by the Union. Section 28 of the Civil Service Act, 53 P.S. § 23461, established a "complete and exclusive system," but only for those employees who are not members of the Union. Taken literally, Section 28 would not allow unions to represent any employee covered by civil service. Further, the language of Section 28 must be understood in its context. In 1907, the Civil Service Act replaced all prior statutes and ordinances relating to "the civil service of cities of the second class." Section 28 of the Civil Service Act, 53 P.S. § 23461. Thus, the new replacement statute became the complete and exclusive system for civil service employees of cities of the second class.

Section 28 simply does not address employees who have rights under *both* the Civil Service Act and Act 195. Further, no session of the General Assembly can bind subsequent legislative sessions enacting a different or conflicting legislation. *Mitchell v. Chester Housing Authority,*

---

43 P.S. § 1101.701 (emphasis added). *See also City of Pittsburgh v. Pennsylvania Labor Relations Board,* 539 Pa. 535, 538, 653 A.2d

1210, 1212 (1995) (noting that pensions are included within the mandatory bargaining provisions of Section 701).

389 Pa. 314, 321, 132 A.2d 873, 877 (1957). Here, Act 195 was enacted to permit collective bargaining towards the goal of labor harmony in the public sector. The trial court's reading of Section 28 of the Civil Service Act would deny the City the ability to negotiate on the fundamental concern of seniority and furloughs, reducing Act 195 to establishing only an "illusory right of collective bargaining." *State College Area School District,* 461 Pa. at 503, 337 A.2d at 266.

■ Moreover, in the present matter, the City and the Union have already agreed that the issue of seniority and furloughs is a "condition of employment" to be included in the CBA. The layoff provisions have been in place since at least 1984 and have been employed through two City layoffs. The remedy for an alleged illegality is to employ the principles of good faith bargaining and have the provisions removed from future agreements. *Fraternal Order of Police, E.B. Jermyn Lodge No. 2 v. Hickey,* 499 Pa. 194, 200, 452 A.2d 1005, 1008 (1982). Questions as to the legality of proposed terms of a collective bargaining agreement must be resolved by the parties at the bargaining stage. *Pittsburgh Joint Collective Bargaining Committee,* 481 Pa. at 75, 391 A.2d at 1322–1323.

We hold that the trial court erred in concluding that the seniority and layoff provisions of the Civil Service Act controlled the layoff of Employees, which was done for reason of economy. To the contrary, the terms of Employees' employment, including, seniority and layoff, were governed by the CBA. Accordingly, we reverse the trial court.[15]

### ORDER

AND NOW, this 21st day of December, 2005, the order of the Court of Common Pleas of Allegheny County dated December 15, 2004, in the above captioned matter is hereby reversed.

---

**15.** Because of our disposition of this issue we need not address the City's argument that the Home Rule Charter Law provides additional support for its ability to negotiate a collective bargaining agreement with terms that conflict with the Civil Service Act. Employees argue that the City waived this issue, but our review of the record shows that the issue was presented to the trial court for its consideration and was, thus, preserved. We also need not address the City's jurisdictional argument, which is just another way of arguing that the seniority and layoff provisions of the CBA prevail over the conflicting provisions in the Civil Service Act. The City is not really serious that this Court lacks subject matter jurisdiction because it requests that we reinstate the order of the Civil Service Commission, not that we vacate that order for lack of jurisdiction. Indeed, it tortures logic for the City, the appellant, to argue that the court to which it presents its appeal lacks jurisdiction. Union, *amicus curiae* in this appeal, does not agree with the City, noting that a challenge to discharge may be pursued either in arbitration or in a civil service appeal.